1

**KATTEN MUCHIN ROSENMAN LLP**
Stuart M. Richter (SBN 126231)

2
stuart.richter@kattenlaw.com
Yonaton Rosenzweig (SBN 248137)

3
yoni.rosenzweig@kattenlaw.com
Meegan Maczek (SBN 260609)

4
meegan.maczek@kattenlaw.com
2029 Century Park East, Suite 2600

5
Los Angeles, CA 90067-3012
Telephone:  310.788.4400

6
Facsimile:  310.788.4471

7
Attorneys for Plaintiff
GOTTEX FUND MANAGEMENT, LTD.

8

## UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

## SOUTHERN DIVISION

11

| | |
|---|---|
| GOTTEX FUND MANAGEMENT, LTD., a Delaware corporation, | Case No. SACV-13-00922 AG (JPRx) |
| Plaintiff, | **GOTTEX FUND MANAGEMENT, LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS FILED BY MKA REAL ESTATE OPPORTUNITY FUND I, LLC AND MKA CAPITAL GROUP ADVISORS, LLC** |
| vs. | |
| MKA REAL ESTATE OPPORTUNITY FUND I, LLC, a California limited liability company; MKA CAPITAL GROUP ADVISORS, LLC, a California limited liability company; JASON SUGARMAN, an individual; MICHAEL ABRAHAM, an individual; ELIZABETH SUGARMAN, an individual; LAUSANNE, LLC, a California limited liability company; EQUIPMENT RENTAL & MANAGEMENT, LLC, a Nevada limited liability company; and DOES 1-10, | Date:  November 25, 2013 Time: 10:00 a.m. Place: Courtroom 10D Hon. Andrew Guilford |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENT**

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL BACKGROUND ........................................................................2

    A.   Gottex Makes a $100 Million Senior Debt Investment in MKA Fund...................................................................................................2

    B.   MKA Defendants Grant Gottex Express Approval Rights over Payment of Attorneys and Management Fees. ...........................................3

    C.   MKA Parties Agree that No Representations Exist Other than the Written Agreements. ......................................................................................3

    D.   MKA Fund Defaults on Repayment. ..........................................................4

    E.   Payments Made to MKA Advisors and Dan White Without Approval....................................................................................................5

III.   PROCEDURAL HISTORY ..........................................................................5

    A.   Gottex Seeks Receiver Over Assets and Fraudulent Conveyances. ..........5

    B.   MKA Counterclaims for Fraud, Torts, Usury, and Penal Violations. ...................................................................................................6

IV.    LEGAL STANDARD ....................................................................................7

V.     DEFENDANTS' COUNTERCLAIMS 1-3 FOR FRAUDULENT INDUCEMENT FAIL TO STATE A CLAIM ............................................8

    A.   MKA Defendants Cannot Show Reasonable Reliance Because the Alleged Promises Contradict the Express Terms of the Agreements They Signed. ...............................................................................................8

    B.   The Fraud Claims Do Not Adequately Allege Intent. .............................11

    C.   The Fraud Claims Fail to Allege False and Material Misrepresentations. ................................................................................12

VI.    DEFENDANTS' COUNTERCLAIMS 6-7 FOR TORTIOUS INTERFERENCE FAIL TO STATE A CLAIM ........................................13

    A.   MKA Fund's Interference Claim Fails Because the Claim is Not Based Upon a Third-Party Breach. ...........................................................13

    B.   The Interference Claims Also Fail Because Gottex's Purported Interference Was Privileged........................................................................13

    C.   MKA Defendants Fail to Plead the Interfered with Contracts, Terms, and Other Required Facts. ............................................................14

VII.   MKA FUND'S COUNTERCLAIM 9 FOR USURY FAILS TO STATE A CLAIM ...........................................................................................15

i

VIII.  MKA DEFENDANTS' COUNTERCLAIMS 11-12 FOR RECEIPT OF
STOLEN PROPERTY FAIL TO STATE A CLAIM........................................16

    A.    There is No Private Right of Action Under Section 485. .......................16

    B.    A Facsimile of an Email Transmits Information, Not Property. .............16

IX.    THE CLAIMS CANNOT BE RE-PLED BECAUSE THEY ARE
CONTRACT CLAIMS AT THEIR CORE. .......................................................18

X.    CONCLUSION ................................................................................................19

ii

Case 8:13-cv-00922-AG-JPR   Document 72-1   Filed 10/28/13   Page 4 of 26   Page ID #:1130

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aas v. Super. Court*,
    24 Cal.4th 627 (2000) ........................................................................ 18

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ............................................... 14

*Aerojet-Gen. Corp. v. Transport Indem. Ins.*,
    18 Cal. App. 4th 996 (1993) .............................................................. 17

*Andrew Smith Co. v. Paul's Pak, Inc.*,
    754 F. Supp. 2d 1120 (N.D. Cal. 2010) ............................................ 13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................... 7

*Bank of the West v. Valley Nat'l Bank of Arizona*,
    41 F.3d 471 (9th Cir. 1994) ........................................................... 9, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............. 7, 8

*Broberg v. Guardian Life Ins. Co. of Am.*,
    171 Cal. App. 4th 912 (2009) ............................................................. 9

*Brown v. Wells Fargo Bank, NA*,
    168 Cal. App. 4th 938 (2008) ............................................................. 9

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ......................................................... 8, 11

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal.4th 342 (1992) ......................................................................... 11

*Circle Click Media LLC v. Regus Management Group LLC*,
    No. 12-4000, 2013 WL 57861 (N.D. Cal. Jan. 3, 2013) ................... 10

*Clinkscales v. Carver*,
    22 Cal. 2d 72 (1943) ......................................................................... 16

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .................................................... 8, 9, 10

iii

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF
MKA REAL ESTATE OPPORTUNITY FUND AND MKA CAPITAL GROUP ADVISORS**

*Erlich v. Menezes,*
    21 Cal.4th 543 (1999) ................................................................................. 18

*Green v. Future Two,*
    179 Cal. App. 3d 738 (1986) .................................................................... 15

*Greystone Homes, Inc. v. Midtec, Inc.,*
    168 Cal. App. 4th 1194 (2008) ................................................................. 18

*Halvorsen v. Aramark Unif. Serv.,*
    65 Cal. App. 4th 1383 (1998) ................................................................... 14

*Imperial Ice Co. v. Rossier,*
    18 Cal. 2d 33 (1941) ................................................................................. 13

*In re GlenFed Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) ...................................................................... 8

*In re Vehm Eng'r Corp.,*
    521 F.2d 186 (9th Cir. 1975) .................................................................... 15

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC,*
    No. 07-912, 2007 WL 2206946 (S.D. Cal. July 27, 2007) ....................... 11

*Moradi-Shalal v. Fireman's Fund Ins. Co.,*
    46 Cal. 3d 287 (1988) ............................................................................... 16

*Oracle Am., Inc. v. Serv. Key, LLC,*
    No. 12-790, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ........................ 15

*Pankow Constr. Co. v. Advance Mortg. Corp.,*
    618 F.2d 611 (9th Cir. 1980) .................................................................... 13

*People v. Dolbeer*
    214 Cal. App. 2d 619 (1963) .................................................................... 17

*People v. Strong,*
    30 Cal. App. 4th 366 (1994) ..................................................................... 17

*Pirozzi v. Apple Inc.,*
    913 F. Supp. 2d 840 (N.D. Cal. 2013) ....................................................... 8

*Quelimane Co. v. Stewart Title Guar. Co.,*
    19 Cal. 4th 26 (1998) ................................................................................ 14

iv

*Ruiz v. Gap, Inc.*,
  No. 07-5739, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009), *aff'd*, 380 Fed.
  Appx. 689 (9th Cir. 2010) .................................................................. 17

*Sade Shoe Co. v. Oschin & Snyder*,
  162 Cal. App. 3d 1174 (1984) ........................................................... 14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) .............................................................. 8

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.R.L.*,
  No. 12-2427, 2013 WL 3761535 (S.D. Cal. July 16, 2013) .................. 15

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*,
  143 Cal. App. 4th 1036 (2006).............................................................. 18

*Tanedo v. East Baton Rouge Parish School Bd.*,
  No. 10-1172, 2012 WL 5447959 (N.D. Cal. Oct 4, 2012)...................... 11

*Tenzer v. Superscope, Inc.*,
  39 Cal. 3d 18 (1985) ........................................................................... 11

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 8

*Wailea Partners, LP v. HSBC Bank USA, N.A.*,
  No. 11-3544, 2011 WL 6294476 (N.D. Cal. Dec. 15, 2011) ................ 10

*Webber v. Inland Empire Inv.*,
  74 Cal. App. 4th 884 (1999)................................................................. 13

*Winnett v. Roberts*,
  179 Cal. App. 3d 909 (1986) ............................................................... 15

**Statutes**

Cal. Pen. Code § 496(a) ......................................................................... 16

Cal. Penal Code § 485............................................................................ 16

Cal. Penal Code § 496 ............................................................................ 16

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .......................................................................7

v

Fed. R. Civ. Proc. 9(b) ..................................................................................................8

Plaintiff Gottex Fund Management, Ltd. ("Gottex"), on its own behalf and as assignee of and administrative agent for Gottex ABI Master Fund, Limited, Gottex ABL (Cayman) Limited, Hudson ABL Fund Limited, GVA ABL Portfolio Limited ("Noteholders"), hereby files its Memorandum of Points and Authorities in support of its Motion to Dismiss the Counterclaims of MKA Real Estate Opportunity Fund I, LLC ("MKA Fund") and MKA Capital Group Advisors, LLC ("MKA Advisors," collectively with MKA Fund, "MKA Defendants").

## I.   INTRODUCTION

This is a fraudulent conveyance action brought by a senior secured creditor, Gottex, who discovered in mid-2012 that its debtor was pilfering collateral proceeds from a $100 million loan.  MKA Defendants admit signing seven different contracts requiring them to deposit all collateral proceeds to a secured Control Account.  They further admit to "bypassing" that process and paying themselves millions of dollars in "management fees" without disclosure.  Defendants claim that Gottex waived its security rights due to an "evolution of conduct" that implicitly authorized MKA Advisors to pay itself secret fees that soaked up all the collateral.  These defenses are frivolous and Defendants must return the collateral proceeds.

In order to further distract from these facts, MKA Defendants filed Counterclaims that seek to hold Gottex liable for Defendants' misconduct.  They allege that Gottex "induced" them to breach their own contract and "defrauded" them by failing to assert security rights earlier.  As damages, MKA Defendants claim the fees associated with Gottex's lawsuit.  These Counterclaims amount to no more than repackaged versions of a waiver defense and they are legally untenable.

*First*, the claims sounding in fraud cannot show reasonable reliance.  MKA Defendants accuse Gottex of misleading them into signing and performing under a $100 million loan agreement.  But the alleged misrepresentations contradict the plain meaning of the agreements themselves.  A sophisticated party must use its level of knowledge and intelligence in analyzing any alleged contractual rights.  Where a

1  purported misrepresentation contradicts the written terms of a signed agreement, the
2  element of reasonable reliance fails.

3      *Second*, the fraud claims all fail because the allegation of intent is based on
4  alleged nonperformance of the promise.  California law disfavors claims for
5  "fraudulent breach of promise" and such claims only pass the pleading stage if the
6  allegations *specifically* identify evidence that the promisor had no intent of performing
7  at the time of the promise.  This hurdle cannot be crossed by an allegation of non-
8  performance, nor by an allegation of a motive to profit.

9      *Third*, the interference claims fail because they must be based upon a *third-*
10  *party* breach, not a breach by MKA Defendants themselves.  Moreover, a creditor is
11  privileged to enforce security rights without risking a counter-suit, even where the
12  debtor claims it was rendered unable to pay other debts.

13      *Fourth*, the claims for usury and penal code violations have established
14  exemptions and other legal bars, which apply here.

15  **II.  FACTUAL BACKGROUND**

16      The following factual recitation is taken solely from the allegations of MKA
17  Defendants' Counterclaims, MKA Defendants' admissions in their Answer
18  ("Answer") to Plaintiff's First Amended Complaint ("FAC"), the documents
19  incorporated by reference therein, and facts subject to judicial notice.

20      A.   Gottex Makes a $100 Million Senior Debt Investment in MKA Fund.

21      Around April 12, 2006, Gottex and two of the Noteholders—Gottex ABL and
22  Gottex Cayman—executed a $100 million Note Purchase Agreement ("NPA").
23  (FAC/Answer ¶ 19.)  Under the NPA, Gottex and the Noteholders purchased $100
24  million of Notes from MKA Fund, with maturity dates extended to December 2009 by
25  later agreements.  (FAC/Answer ¶¶ 20, 35, 40, 45.)  MKA Fund simultaneously
26  signed a blanket Security Agreement, assigning all its assets (including collateral
27  proceeds) as security for its obligations under the NPA and the Notes.  (FAC/Answer
28  ¶ 23, Ex. 1 ¶ 4.)

2

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF
MKA REAL ESTATE OPPORTUNITY FUND AND MKA CAPITAL GROUP ADVISORS

B. <u>MKA Defendants Grant Gottex Express Approval Rights over Payment of Attorneys and Management Fees.</u>

From their inception, the Notes and Security Agreement required MKA Fund to deposit all collateral proceeds into a secured Control Account, from which Gottex could approve or deny vendor payments.  (FAC, Ex. 1 ¶ 6(b) (Security Agreement), Ex. 5, ¶ 8(b) (Current Note), Exs. 6-8 ¶ 8(b) (the other Current Notes); Answer ¶¶ 23, 35.)

In December 2008, the parties signed a Modification Agreement where MKA Defendants reaffirmed the obligation to pay all proceeds into a Control Account before paying vendors, including General Counsel.  (FAC/Answer ¶ 39, Ex. 9 ¶ 10.) Regarding management fees, MKA Defendants both agreed to seek Gottex's express approval by (i) disclosing the amount of proposed fees, (ii) disclosing the basis for the calculation, and (iii) awaiting approval.  (FAC/Answer ¶ 39, Ex. 9 ¶ 10.)  Any payment of management fees was "subject to" Gottex's approval and "subject to" disclosure of the basis.  (*Ibid.*)

C. <u>MKA Parties Agree that No Representations Exist Other than the Written Agreements.</u>

These promises were "absolute and unconditional," irrespective of any challenges to validity or enforceability or any defense other than full repayment. (FAC, Ex. 1 ¶ 13.)  MKA Defendants specifically disclaimed the defenses of course of dealing, waiver, and delay.  (FAC, Ex. 1 ¶¶ 11(a), 13, 15(a).)  The Security Agreement, Notes, and Modification Agreement all contain integration clauses and bar any modification by conduct or in any manner, except in writing:

Security Agreement:

> No failure on the part of the Administrative Agent [Gottex] to exercise, *and no course of dealing with respect to*, and no delay in exercising any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by [Gottex] of any right, power or remedy hereunder preclude any other ….

3

> All rights and remedies of [Gottex] are cumulative and are not exclusive of any remedies provided by law.
>
> The terms of this Agreement may not be waived altered or amended except by an instrument in writing duly executed.

(FAC, Ex. 1 ¶ 15(a); s*ee also id.* ¶ 13 (Gottex's security rights—including secured accounts—are absolute irrespective of any defense besides repayment).)

The Notes contain similar provisions:

> No failure on the part of the Noteholder or the Administrative to exercise, and no delay in exercising, any right hereunder, under this Note shall operate as a waiver thereof …. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.
>
> No notice … shall … constitute a waiver of the rights of the Noteholder or the Administrative Agent to any other or further action in any circumstance without notice or demand.

(*See, e.g.*, FAC, Ex. 5 at 10 ¶ 5.)

The Modification Agreement reaffirms these provisions:

> [T]he Security Agreement, the First Amended Notes, the Note Agreements and all other documents … remain unmodified and in full force and effect …
>
> No waiver or modification of the terms hereof shall be valid unless in a writing signed by the parties hereto.

(FAC, Ex. 9 ¶¶ 12, 26.)

    D.   <u>MKA Fund Defaults on Repayment.</u>

MKA Fund defaulted on the obligation to timely repay its $100,000,000 loan by December 2009.  (FAC/Answer ¶¶ 46, 47, 66 (admitting that only $67.5 million was repaid as of October 2012).)  MKA Fund agreed that, upon default, it would hold all Collateral and proceeds "in trust" for Gottex.  (FAC, Ex. 1 ¶ 9(e).)  In July 2010, MKA Fund again promised in writing to deposit all Collateral proceeds to the Control Account.  (FAC/Answer ¶ 29, Ex. 3 ¶ 3 (Control Account Letter Agreement).)

4

E.     Payments Made to MKA Advisors and Dan White Without Approval.

After default, MKA Defendants admit that they paid MKA Fund collateral proceeds to MKA Advisors and to General Counsel, Daniel White, without approval. (FAC/Answer ¶¶ 51, 54.)  Gottex claims that these amounts total at least $12 million. (FAC ¶¶ 64-65.)   Defendants dispute the amount of the diversions, but admit they "bypassed" the approval methods in the written agreements.   (Counterclaims ¶ 27 (MKA "bypassed the Control Account" in order to pay unsecured debts).)  Defendants also claim Gottex lost its security rights due to waiver or estoppel.  (Answer at 24.)

## III.    PROCEDURAL HISTORY

A.     Gottex Seeks Receiver Over Assets and Fraudulent Conveyances.

On July 18, 2012, Gottex filed a lawsuit seeking appointment of a receiver over MKA Fund's assets and seeking to recover for the fraudulent conveyances paid to Sugarman and Abraham.   (*Gottex Fund Management Ltd. v. MKA Real Estate Opportunity Fund I, LLC*, SAC 12-1172 AG ("Prior Action"), Dkt 1.)  Gottex moved for a receiver on September 24, 2012.  (Prior Action, Dkt 5.)  One week before the hearing, MKA Fund agreed to surrender all MKA Fund assets to Gottex's affiliate pursuant to a UCC foreclosure, and the matter was dismissed without prejudice. (Prior Action, Dkt. 51.)

On June 18, 2013, Gottex filed the current lawsuit seeking to unwind the fraudulent conveyances over prior years.   Gottex alleges that MKA Defendants diverted at least $12 million proceeds around the Control Account and into an account controlled by its attorney, Daniel D. White, although the amount may be greater. (FAC ¶¶ 48-54, 64-65.)   Gottex further alleges that a substantial portion of the diverted proceeds were used to pay unsecured debts to Sugarman and Abraham, using the other Defendants as conduits.  (FAC ¶¶ 55-63.)

On August 19, 2013, Defendants (other than Mrs. Sugarman and Lausanne) filed a motion to dismiss all of Gottex claims.  (Dkt. 21.)  The Motion asserted that Gottex's $100 million financing into MKA Fund was void because Gottex was not

registered under California's lender laws.  (*Id.* at 8:20-26.)  Simultaneously, Elizabeth Sugarman and Lausanne filed a motion to dismiss on the grounds that the allegations against them were inadequate.  (Dkt. 20.)  Gottex amended its complaint to assert additional facts regarding these claims.  (Dkt. 37.)  Among other things, Gottex pointed out that it was exempt from registering.  (*See id.* ¶¶ 18-20.)

Mrs. Sugarman and Lausanne re-filed their motion to dismiss.  (Dkt. 54.)  The other Defendants answered and admitted many of the material allegations.  They admitted about $1.5 million worth of diversions of proceeds to MKA Advisors and Mr. White's trust account without disclosure or approval.  (FAC/Answer ¶¶ 51, 54; Counterclaims ¶¶ 27, 58 (admitting that Defendants did not comply with contractual obligation to be in "compliance with the use of the Control Account").)

## B.  MKA Counterclaims for Fraud, Torts, Usury, and Penal Violations.

Simultaneous with their Answer, MKA Defendants filed counterclaims.

The first counterclaim for fraudulent inducement contends that MKA Fund was induced to enter into a forbearance and settlement agreement at the end of 2008 (the "Modification Agreement").  (*Id.* ¶¶ 16-20, 34.)  Gottex supposedly made three representations embodied in the Modification Agreement itself:  (i) that Gottex would honor payments owed by MKA Fund to its manager and vendors (*id.* ¶ 17), (ii) that Gottex "recognized and acknowledged" MKA Advisors' rights to fees (*id.* ¶ 18), and (iii) that Gottex would approve disbursements within three days from receipt (*id.* ¶ 19).  MKA Fund alleges that Gottex's lawsuit and related communications in July 2012 revealed that it "secretly intended" to break these written promises.  (*Id.* ¶¶ 31, 36, 38.)

The second counterclaim for fraudulent inducement asserts that Gottex requested MKA Advisors' services "in order to enhance the value of assets."  (*Id.* ¶ 45.)  MKA Advisors does not claim that Gottex requested specific services and didn't pay it, just that Gottex would generally approve services and then stopped authorizing those service once it filed its complaint and asserted claims for fraudulent

6

1  conveyances.  (*Id.* ¶ 46, 48 ("in July 2012 Gottex gave its first indications, and then

2  confirmed in multiple writings from Amy Lai and Gottex's counsel, that Gottex would

3  deny… payment to Advisors ….")  Again, MKA Advisors claims Gottex "secretly

4  harbored" this intent to enforce its security rights back in 2008 when it settled a past

5  dispute.  (*Id.* ¶ 49.)

6      The third counterclaim asserts that, by the same alleged conduct, Gottex

7  induced MKA Fund to breach *its own* contracts with Gottex.  "Gottex intentionally

8  allowed [MKA] Fund to not abide by the strict letter of the contractual arrangements"

9  and then "later claimed breach of contract."  (*Id.* ¶¶ 56-57.)  MKA Fund says it was

10 "led to believe that strict compliance with the use of the Control Account was not

11 required by the Gottex Lenders."  (*Id.* ¶ 58.)  It seeks punitive damages from Gottex

12 because it "asserted breach on behalf of" the Noteholders.  (*Id.* ¶ 63.)

13     Counterclaims 6-7 are for contractual interference.  MKA Fund and MKA

14 Advisors claim that they are parties to unspecified contracts among themselves and

15 with vendors.  (*Id.* ¶¶ 81-83, 89-90.)  Gottex allegedly "interfered with" these

16 contracts when it "asserted" that it would deny management fees to MKA Advisors in

17 July/August 2012.  (*Id.* ¶¶ 85, 91.)

18     Counterclaim 9 is a claim that Gottex charged usurious interest.  (*Id.* ¶ 98-104.)

19     Counterclaims 11-12 allege that Gottex received stolen documents.  Gottex

20 supposedly harmed MKA Defendants by disseminating the evidence through an e-

21 filing, without approval.  (*Id.* ¶ 131.)

22 **IV.   LEGAL STANDARD**

23     A district court should dismiss a complaint under Rule 12(b)(6) where the

24 plaintiff cannot proffer "enough facts to state a claim to relief that is plausible on its

25 face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d

26 929 (2007).  The allegations, taken as true, must show more than a "sheer possibility"

27 of unlawful conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.

28 Ed. 2d 868 (2009).  Allegations that are "merely consistent with" liability "stop short

7

of the line between possibility and plausibility."  *Id.*  Allegations must raise a reasonable expectation that a defendant is liable before the court will "unlock the doors of discovery." *Id.* at 678-79.

Claims for fraud are subject to a heightened pleading standard.  The circumstances constituting the alleged fraud "shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  In addition, a claimant must show "how or why the representation was false or misleading," and provide "the identity of the person engaged in the fraud," not merely the name of a company.  *Pirozzi v. Apple Inc*., 913 F. Supp. 2d 840, 849 (N.D. Cal. 2013), citing *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994).  Allegations of intent must be plausible as well, and may not be theoretical or conclusory.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (applying *Twombly* to scienter standard, holding the allegations must "state enough facts to raise a reasonable expectation that discovery will reveal evidence of" and intent).

Leave to amend may be denied when the court determines that the allegations themselves show that additional amendments "could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

## V.     DEFENDANTS' COUNTERCLAIMS 1-3 FOR FRAUDULENT INDUCEMENT FAIL TO STATE A CLAIM

### A.     MKA Defendants Cannot Show Reasonable Reliance Because the Alleged Promises Contradict the Express Terms of the Agreements They Signed.

Under California law, a fraud claim "shall be denied if the conduct of the plaintiff in relying upon a misrepresentation in the light of his own intelligence and information was manifestly unreasonable." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012), citing *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal.

8

App. 4th 912, 921 (2009). Whether reliance is "manifestly unreasonable" is measured by the Court based upon claimant's "intelligence and information." *Davis*, 691 F.3d at 1163. If a party "put faith in representations that were preposterous or shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth," no relief is possible. *Id.*

The $100 million debt investment by Gottex was a complex commercial transaction between sophisticated parties. In such transactions, it is manifestly unreasonable to fail to read a contract before signing it, to rely upon representations that contradict the contract, or to rely upon a wrong reading of the contract. *Id.*; *see also Brown v. Wells Fargo Bank, NA*, 168 Cal. App. 4th 938, 958-59 (2008) (there can be no reasonable reliance where the plaintiff, dealing at arm's length, "had a reasonable opportunity to discover the true terms of the contract").

This transaction was between two sophisticated financial investors. It is manifestly unreasonable for a lender to rely upon any representations from another lender in signing a loan transaction, other than the written deal. *See generally Bank of the West v. Valley Nat'l Bank of Arizona*, 41 F.3d 471 (9th Cir. 1994). In *Bank of the West*, two lenders participated in a project, lending a total of $11 million. *Id.* at 473. When the project failed, the lead lender sued for contribution and the second lender counterclaimed for "fraudulent inducement." *Id.* at 477. The district court rejected counterclaimant's contention that it "reasonably relied" upon representations of the lead lender. *Id.* Despite "reliance in fact," the Court held, the terms of an arm's length contract govern what is "reasonable" as between sophisticated parties. The Ninth Circuit affirmed:

> Valley National claims that regardless of the contractual terms, it did, in fact, rely on Bank of the West for important information concerning the borrower. … This "reliance in fact" does not change the parties' agreement …. In this case, the clear and explicit language of the contract prevented justifiable reliance.

*Id.*   Arms-length sophisticated parties are simply not given the same indulgence to introduce allegations or evidence of actual reliance in the teeth of written contracts. Put another way, the written contract itself reflects the reasonable expectations of business parties.

> [R]egardless of what they actually *did*, the banks *expressly agreed* to a relationship …. There was no lack of clarity in the contract, no mutual mistake, no reason to suppose that the parties mutually intended any relationship other than what the contract said. … [T]o the extent that it did rely on Bank of the West, Valley National's reliance was not justifiable.

*Id.* at 477-478; *compare* Counterclaim ¶ 58 (MKA "Fund was reasonable in relying upon the conduct of Gottex to believe that strict compliance with the use of the Control Account was not required.").

Under *Bank of the West* and *Davis*, these types of claims for alleged fraud in entering or performing a contract are regularly dismissed at the pleading stage.  *See, e.g., Circle Click Media LLC v. Regus Management Group LLC*, No. 12-4000, 2013 WL 57861, *10-11 (N.D. Cal. Jan. 3, 2013) (granting 12(b)(6) motion to dismiss fraud claim because it relied upon purported misrepresentation that was contradicted by the signed agreement); *Wailea Partners, LP v. HSBC Bank USA, N.A.*, No. 11-3544, 2011 WL 6294476, *12 (N.D. Cal. Dec. 15, 2011) (dismissing complaint accusing HSBC bank of misleading investor into a swap agreement).

MKA Defendants claim that they relied upon Gottex's representations not to enforce the Control Account and its representation that the Modification Agreement allowed payment of undisclosed management fees.  These allegations fail to establish *reasonable* reliance for the purpose of maintaining a fraud and punitive damages claim because they contradict the written documents signed by MKA Defendants.  On numerous occasions, MKA Defendants agreed to deposit all proceeds of collateral into the Control Account.  In the 2008 settlement and Modification Agreement, MKA Defendants reaffirmed this duty and agreed that payment of management fees is "subject to" disclosure and approval by Gottex.  (FAC, Ex. 9 ¶ 10.)  MKA Defendants

10

1   cannot have *reasonably* relied upon any purported "lulling" or "evolution" after

2   signing for fraud purposes because they *expressly agreed* that there would be no oral

3   waivers of security rights (*supra*), and because they signed another agreement during

4   the purporting "lulling." (FAC/Answer ¶ 29, Ex. 3 ¶ 3.)  *Supra.*

5       Counterclaims 1-3 seek to convert MKA Defendants' own breach into a claim

6   for fraud and punitive damages.  California law bars such claims.

7       B.   The Fraud Claims Do Not Adequately Allege Intent.

8       Non-performance of a promise does not prove a fraudulent lack of intent to

9   perform.   "[S]omething more than nonperformance is required to prove the

10  defendant's intent not to perform his promise," the California Supreme Court has held.

11  *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30-31 (1985); *Cafasso*, 637 F.3d at 1055.

12  Without this rule, every breach of contract claim would turn into a fraud claim.  *See*

13  *Tanedo v. East Baton Rouge Parish School Bd.*, No. 10-1172, 2012 WL 5447959, *8

14  (N.D. Cal. Oct 4, 2012) (granting motion to dismiss fraud claim on this basis, noting

15  that "[o]therwise, every breach of contract claim would support a claim of fraud" by

16  mere allegations of non-performance); *see also Mat-Van, Inc. v. Sheldon Good & Co.*

17  *Auctions, LLC*, No. 07-912, 2007 WL 2206946, *6 (S.D. Cal. July 27, 2007) (same).

18      Yet MKA Defendants' allegation that Gottex intended to defraud is that Gottex

19  did not perform when it sought to stop payment of fees.  (Counterclaim ¶ 31 (Gottex

20  "revealed" fraudulent intent in August 2012 upon asserting rights ); *id.* ¶ 48 (filing of

21  complaint and related communication in July 2012); *id.* ¶ 59 (same for third claim).)

22  Aside from raising non-performance, MKA Defendants have not alleged any other

23  material allegation in support of its conclusion that Gottex had a fraudulent intent.[1]

24

25  _____

26  [1]    MKA vaguely argues by way of background that Gottex had a motive to profit because its funds were allegedly losing value during the recession.  (Counterclaims ¶¶ 31-32.)  However it is well established that the motive to profit cannot afford a basis for bad faith or wrongful intent in a contractual relationship.  *See, e.g., Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2

27  Cal.4th 342, 362 & 376 (1992) (action taken by contracting party "solely to realize a profit" is not wrongful, "presumably both parties enter into a [contract] with the hope and expectation it will be

28  profitable").

11

1  This fails to plausibly allege fraudulent intent and, accordingly, the conclusory

2  allegation of intent fails.

3      C.    The Fraud Claims Fail to Allege False and Material Misrepresentations.

4      The three misrepresentations allegedly "embodied" in the written documents

5  (Counterclaims ¶¶ 17-20) cannot give rise to a claim for fraud because the pleadings

6  establish that they are not false.

7      **Alleged Representation #1:** Gottex agreed to honor all payments owed by

8  MKA Fund to MKA Advisors in paragraph 9 of the Modification Agreement. This is

9  an inaccurate reading of the contract. The contract required all proceeds of collateral

10 to be deposited into the Control Account, including before paying Permitted

11 Expenses. (FAC/Answer ¶ 39, Ex. 9 ¶¶ 9-10.) And MKA does not allege the failure

12 to authorize any "Permitted Expenses."

13     **Alleged Representation #2:** Gottex recognized and acknowledged the right of

14 MKA Advisors to receive existing and past due amounts in paragraph 10 of the

15 Modification Agreement. This another false reading of the Modification Agreement,

16 which actually says that payments to MKA Advisors are "subject to" approval,

17 disclosure of the claimed fees, and documentation of the fees. (*Id.* ¶ 10.)

18     **Alleged Representations 3-4**: Gottex would approve all requested

19 disbursements within 3 days and provide a written statement under the Notes. That is

20 not what the documents say. The documents set forth multi-conditional requirements

21 for approval—including that the proceeds be disclosed to Gottex (not concealed) and

22 that MKA Defendants ask for disbursement (which they admit they did not). (FAC,

23 Ex. 6 ¶¶ 4(a)(x), 4(a)(y); Exs. 7-8 (same).) MKA Defendants cannot sue for fraud

24 based upon an alleged "promise" contained in a loan document when the loan

25 document does not contain the purported promise, but says the promise is conditional.

26

27

28

# VI. DEFENDANTS' COUNTERCLAIMS 6-7 FOR TORTIOUS INTERFERENCE FAIL TO STATE A CLAIM

### A. MKA Fund's Interference Claim Fails Because the Claim is Not Based Upon a Third-Party Breach.

An interference claim must be based on the breach by a third party not the claimant. The "intentional act . . . must be designed to induce a breach or disruption of the contractual relationship *by the third party*" and result in "an actual breach [or] disruption of the contractual relationship *by the third party*." *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal. 2010) (granting summary adjudication on plaintiff's interference claim where plaintiff alleged defendant caused plaintiff itself to breach the contract). MKA Fund's sixth claim for interference is based on Gottex's causing MKA Fund to breach *its* unidentified contracts with MKA Advisors and vendors, by causing it not to pay alleged debts. (*See* Counterclaim ¶¶ 81-87.) This fails to state a claim.[2]

### B. The Interference Claims Also Fail Because Gottex's Purported Interference Was Privileged.

Where two parties have separate contracts with a third party, one party "may resort to any legitimate means . . . to secure performance of [the] contract even though the necessary result will be to cause a breach of the other contract." *Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 37 (1941). For example, a creditor like Gottex is "entitled to take all legal steps to obtain payment of a debt owed to it," even if that causes the debtor to "default on its obligations to the other creditors." *Webber v. Inland Empire Inv.*, 74 Cal. App. 4th 884, 906 (1999); *Pankow Constr. Co. v. Advance Mortg. Corp.*, 618 F.2d 611, 618 (9th Cir. 1980) (defendant did not induce breach by applying funds received in final loan disbursement towards the third-party's debt to the defendant

---

[2] To the extent MKA Advisors alleges in its seventh claim that Gottex interfered with MKA Advisors' contracts with unspecified MKA Fund borrowers, which is not clear, this claim fails for the same reason because MKA Advisors does not allege that the MKA Fund borrowers (the third parties) breached the contracts. (*See* Counterclaim ¶ 89.)

13

1   rather than third-party debt to plaintiff).  The privilege supports a motion to dismiss

2   where, as here, the defense appears on the face of the Counterclaim.  *Halvorsen v.*

3   *Aramark Unif. Serv.*, 65 Cal. App. 4th 1383, 1396 (1998) (trial court properly

4   sustained demurrer based on manager's privilege); *Sade Shoe Co. v. Oschin & Snyder*,

5   162 Cal. App. 3d 1174, 1180 (1984).

6        Gottex's purported interference here—not approving or timely approving

7   payments to MKA Advisors and unspecified vendors—is privileged because Gottex

8   was acting to secure MKA Fund's performance pursuant to the underlying

9   agreements, including MKA Fund's security repayment duties.  (*See* Counterclaims ¶

10  21 ("Gottex . . . intended to only abide by contractual terms when and if

11  counterdefendants considered it beneficial to their own interests . . ."); *id.* ¶ 59

12  ("Gottex have asserted that such conduct [strict compliance with the contract]

13  constitutes breach of contract.").)

14      C.    MKA Defendants Fail to Plead the Interfered with Contracts, Terms, and

15            Other Required Facts.

16        MKA Defendants' interference claims also fail because they have not alleged

17  the required "facts surrounding the type or nature of the 'contracts,'" including the

18  identity of the actual contract(s), vendors, or even the contracts terms purportedly

19  breached.  *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956

20  (N.D. Cal. 2003) (granting defendants' motion to dismiss plaintiff's interference

21  claim); *see Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)

22  (claimant must plead a valid contract, knowledge of the contract, and intentional acts

23  designed to induce a breach or disruption of the contractual relationship).

24        MKA Defendants' allegations fail to apprise the Court of any of the necessary

25  facts about the contracts, the third parties, or the terms that were breached.  (*See*

26  *generally* Counterclaims ¶¶ 80-93.)  No contract is identified by name, no term is

27  identified, and no date of execution or date of breach is set forth.  Such insufficient

28  allegations are regularly dismissed at the pleading stage.  *See Seoul Laser Dieboard*

14

1   *Sys. Co. v. Serviform, S.R.L.*, No. 12-2427, 2013 WL 3761535, *8 (S.D. Cal. July 16,

2   2013) (granting motion to dismiss plaintiff's claim for interference with contracts

3   between plaintiff and "its suppliers, distributors and customers," holding the phrase

4   was too vague); *Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-790, 2012 WL 6019580,

5   *8 (N.D. Cal. Dec. 3, 2012) (dismissing interference claims where plaintiff did not

6   identify "particular third parties" that defendant induced to breach the contracts or

7   "the specific provisions of those agreement that allegedly were breached").

## VII.   MKA FUND'S COUNTERCLAIM 9 FOR USURY FAILS TO STATE A CLAIM

No usury claim exists unless the plaintiff has first repaid all of the principal and non-usurious interest. *In re Vehm Eng'r Corp.*, 521 F.2d 186, 188-89 (9th Cir. 1975) ("[W]hen a debtor pays the interest on a usurious loan the payment is deemed to be a payment of the outstanding principal. Therefore, the debtor's cause of action to recover usurious interest does not accrue until he has made a payment in excess of the principal amount of the debt"). In California, even if a loan is considered usurious, the loan is not declared null and void; the lender is still entitled to a return of the principal and a legal rate of interest. *Green v. Future Two*, 179 Cal. App. 3d 738, 744 (1986); *Winnett v. Roberts*, 179 Cal. App. 3d 909, 921 (1986).

MKA Fund has not pled (nor can it) that it paid all of the principal amount and non-usurious interest, let alone any usurious interest. MKA Fund fails to allege that the principal amount of the $100 million financing transaction was repaid, nor could it because the pleadings establish that only $66 million was repaid on the eve of foreclosure. (FAC/Answer ¶ 66.) MKA Fund on numerous occasions (including in the foreclosure disclosures) established that the value of the remaining property was far below $32.5 million. Accordingly, MKA Fund will not be able to re-plead without contradicting these past statements.

15

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF
MKA REAL ESTATE OPPORTUNITY FUND AND MKA CAPITAL GROUP ADVISORS

1 | **VIII.  MKA DEFENDANTS' COUNTERCLAIMS 11-12 FOR RECEIPT OF**
2 | **STOLEN PROPERTY FAIL TO STATE A CLAIM**

3       MKA Defendants assert two claims for relief arising from Gottex's receipt of
4 information that, according to MKA Defendants, were stolen from them by a
5 whistleblower.  First, they claim Gottex received an email from Mr. White to other
6 MKA officers, instructing them to abuse Gottex's security rights.  Second, they claim
7 Gottex received information from MKA Advisors' general ledger concerning how to
8 book this transfer of money.  MKA Defendants are not entitled to any relief.

9       A. <u>There is No Private Right of Action Under Section 485.</u>

10       California Penal Code section 485 does not afford civil litigants a private right
11 of action.  In general, when a criminal statute does not afford a private right of action,
12 none will be inferred by a court absent an indication of legislative intent.  *Clinkscales*
13 *v. Carver*, 22 Cal. 2d 72, 75 (1943) ("[a] statute that provides for a criminal
14 proceeding only does not create a civil liability; if there is no provision for a remedy
15 by civil action to persons injured by a breach of the statute it is because the
16 Legislature did not contemplate one."); *see also Moradi-Shalal v. Fireman's Fund*
17 *Ins. Co.*, 46 Cal. 3d 287, 294-95 (1988) ("[I]f the Legislature truly had intended to
18 grant third party claimants a private cause of action then surely much more direct and
19 precise language would have been selected" because "one would reasonably have
20 expected that the Legislature simply would have directly imposed such liability in
21 clear, understandable, unmistakable terms, as it has done in numerous other
22 statutes.").  Section 485 does not evidence a legislative intent to create a private right
23 of action.

24       B. <u>A Facsimile of an Email Transmits Information, Not Property.</u>

25       Penal Code section 496 applies only to a party who "buys or receives any
26 *property* that has been stolen … knowing the *property* to be stolen."  Cal. Pen. Code §
27 496(a) (emphases added).  The statute is directed at "the traditional 'fence'" who
28 "provide[s] the thieves with a market or depository for their loot."  *People v. Strong*,

16

1 | 30 Cal. App. 4th 366, 371 (1994).  Although the statute applies to stolen "papers," it
2 | does not apply to intangible information nor to copies or facsimiles of documents.  *See*
3 | *People v. Dolbeer* 214 Cal. App. 2d 619, 623 (1963) (statute does not apply to
4 | "merely the copying, transcribing or photographing" of papers).    Under that
5 | circumstance, "nothing *tangible* had been purloined."  *Id.* (emphasis added); *see also*
6 | *Ruiz v. Gap, Inc.*, No. 07-5739, 2009 WL 250481, *4 (N.D. Cal. Feb. 3, 2009), *aff'd*,
7 | 380 Fed. Appx. 689 (9th Cir. 2010) (distinguishing between receipt of "property" and
8 | receipt of "unauthorized" information).

9 |        Here, MKA Defendants' Counterclaims allege that an anonymous individual
10 | supposedly used a copy of an MKA email, and then scanned the email "via facsimile
11 | to Gottex."  (Counterclaims ¶¶ 112-113.)  Gottex's receipt of a facsimile copy of an
12 | email does not fit within the statutory definition of "property" because Gottex did not
13 | receive anything tangible—not even a piece of paper—but received an electronic fax
14 | transmission of an email.  That does not meet the definition of property under the
15 | penal code.

16 |        This claim is a third-level distraction in this lawsuit.  The claim is especially
17 | problematic in this context because it impinges on the rights of civil litigants to
18 | protect themselves when they learn their money is being stolen.  When a lawyer learns
19 | that client property has been misappropriated, the lawyer has professional duties to
20 | protect his or her client.  *Aerojet-Gen. Corp. v. Transport Indem. Ins.*, 18 Cal. App.
21 | 4th 996, 1005-06 (1993). "Once [counsel] had acquired the information in a manner
22 | that was not due to his own fault or wrongdoing, he cannot purge it from his mind.
23 | Indeed, his professional obligation demands that he utilize his knowledge about the
24 | case on his client's behalf."  *Id.* at  1006 (holding that counsel had a **duty to use** a
25 | confidential witness list that belonged to opposing counsel and had no obligation to
26 | return or disclose it).

27 |        Indeed, MKA Defendants long ago agreed that Gottex had express legal rights
28 | to view, access, and use information about its collateral to protect from abuse.  As a

secured creditor, Gottex was always entitled to information concerning its collateral, even if MKA Fund was trying to conceal it.  MKA Fund assigned Gottex possession of all "Documents" or copies that "related to" MKA Fund's collateral.  (FAC, Ex. 1 ¶¶ 4, 37 ¶(l).)   Upon default, Gottex had the express right to "collect, realize, and appropriate, and receive" this information "without notice."  (*Id.* ¶ 11(b).)  Gottex cannot now be in receipt of stolen documents when those documents pertain to MKA Fund collateral and therefore belonged to Gottex.

MKA Defendants admit that the fax related to the sale of Gottex collateral (Belaflora) and that the undisclosed payments were used to pay an insider's undisclosed settlement of a personal guaranty debt.  (*See generally* Dkt. No. 26 [Defendants' Motion to Disqualify]; Dkt. No. 55 [Defendants' Answer] ¶¶ 57-59.)  In light of these admissions, Gottex was entitled to this information about its collateral. The receipt of this information did not deprive MKA Defendants of anything tangible and, therefore, cannot reflect stolen property.

## IX.   THE CLAIMS CANNOT BE RE-PLED BECAUSE THEY ARE CONTRACT CLAIMS AT THEIR CORE.

It is well established that a party may not transform a breach of contract claim into a tort claim.  *See Aas v. Super. Court*, 24 Cal.4th 627, 643 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations"), *superseded by statute on other grounds as noted in Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1202 (2008); *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999) (courts should avoid allowing parties to "convert every contract breach into a tort").  Motions to dismiss a tort claim are properly granted without leave to amend where "the alleged misconduct . . . describes, at most, a breach of contract."  *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1041 (2006) (rebuffing "an improper attempt to recast a breach of contract cause of action as a tort claim").

1       Here, MKA Defendants assert breach of contract but improperly recast the

2   claim into fraud and interference claims.  All of these tort claims are based on

3   Gottex's purported failure to abide by its "contractual obligations" to approve

4   expenses and fees allegedly owed to MKA Advisors and vendors.  (*See* Counterclaim

5   ¶¶ 17-19, 36, 40, 46, 50, 57, 66, 81-85, 89-91.)  Repeatedly, the allegations of tort and

6   fraud return to Gottex's failure to comply with a supposed contractual obligation to

7   authorize these fees or, worse, an implied "evolution" of conduct that somehow

8   became enforceable. (*Id.*) The alleged nonperformance of the contract also supposedly

9   shows Gottex's tortious and fraudulent intent.  (*Id.* ¶¶ 31, 37-38, 49-50, 56-59.)  These

10  allegations of nonperformance, at most, show breach of contract.

11  **X.   CONCLUSION**

12      Because the MKA Defendants have not sufficiently alleged a claim, the Court

13  should dismiss counterclaims 1-3, 6-7, 9, 11-12.  Because the allegations cannot state

14  a claim for relief under California law, they should be dismissed without leave to

15  amend.

16
17  Dated:  October 28,  2013      KATTEN MUCHIN ROSENMAN LLP
                            Stuart M. Richter
18                              Yonaton Rosenzweig
                            Meegan Maczek
19
20                             By:   /s Yonaton Rosenzweig
                            Yonaton Rosenzweig
21                             Attorneys for Plaintiff
                           GOTTEX FUND MANAGEMENT, LTD.

22
23
24
25
26
27
28